UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LION OIL COMPANY, | § § | |
| Plaintiff, | § § | |
| VS. | § | CIVIL ACTION NO. H-08-2746 |
| | § § | |
| GREENWICH INSURANCE COMPANY, | § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Before the Court are Plaintiff Lion Oil Company's ("Lion") Motion for Partial Summary Judgment (Docket Entry ("Doc.") No. 18), Defendant Greenwich Insurance Company's ("Greenwich") Motion for Summary Judgment (Doc. No. 22), Lion's Motion to Strike the Affidavit of Kerry Ebersole (Doc. No. 25), Lion's Motion to Strike the Affidavit of Roger Murray (Doc. No. 35), Lion's Motion to Strike the Amended Affidavit of Kerry Ebersole (Doc. No. 42), Greenwich's Motion to Strike Lion's Surreply (Doc. No. 73), and all responses and replies thereto.

After reviewing the Motions, all related filings, and the relevant law, the Court finds, for the reasons discussed below, that Lion's Motion for Partial Summary Judgment should be granted, that Greenwich's Motion for Summary Judgment should be denied, that Lion's Motions to Strike the Ebersole Affidavits should be granted, that Lion's Motion to Strike the Murray Affidavit should be granted, and that Greenwich's Motion to Strike the Surreply should be granted.

### I. FACTUAL BACKGROUND

A.  **The Underlying Lawsuit**

Lion, a producer of petroleum products, maintains a facility in El Dorado, Arkansas. As part of its operations at the El Dorado facility, Lion entered into a Terminal Guaranty Agreement (the

"TGA") with Asphalt Transport, Inc. ("Asphalt"). Pursuant to the TGA, Asphalt provided transportation of petroleum products from Lion's terminal. On January 11, 2007, James Hicks, an Asphalt truck driver working at the Lion facility, was loading a tanker trailer when it exploded and caught on fire. The fire severely burned Mr. Hicks, and he died several weeks later.

The TGA required Asphalt to carry both general liability and automotive liability insurance coverage of $1,000,000.00 per incident for bodily injury and property damage and also required Asphalt to name Lion as an additional insured under both policies. Asphalt obtained automotive liability insurance coverage from Greenwich pursuant to Policy No. AEC0021436 (the "Policy").

As a result of Mr. Hicks's death, Lion and Asphalt were both sued by Carrie Hicks in the 165th Judicial District Court of Harris County, Texas, Cause No. 2007-761807 ("the underlying lawsuit"). Lion tendered the lawsuit to Greenwich citing its coverage as an additional insured under Asphalt's policy. After Greenwich denied its duty to defend, Lion filed this suit seeking a declaration that Greenwich owes a duty to defend in the underlying lawsuit and asserting a breach of contract claim for Greenwich's failure to do so.[1] Lion and Greenwich are both moving for summary judgment on Lion's duty to defend claim.

**B.     The Policy**

The TGA entered into by Lion and Asphalt contains the following relevant language:

> CARRIER [Asphalt] shall obtain and furnish to LION at its office in El Dorado, Arkansas, certificates reflecting that CARRIER has in force and effect the following insurance and reflecting that LION is indicated as an additional insured therein:
>
> . . .

---

[1] Lion has also made claims against Asphalt and Soules Insurance Agency which are not relevant to the disposition of these Motions.

2

>b. Comprehensive general public liability insurance with a combined single limit of not less than $1,000,000.00 as to any one occurrence for bodily injury and property damage, said insurance to be endorsed to cover the contractual liability assumed by CARRIER in Articles 4 and 11 hereof;
>
>c.   Automotive public liability insurance covering each of CARRIER's vehicles with a combined single limit of not less than $1,000,000.00 for bodily injury and property damage, including environmental restoration, as to any on incident.

(Pl.'s Mot. Part. Summ. J. Ex. 3 at 2). Additional insured coverage is included in the Policy in two endorsements, which are at the center of this dispute. Endorsement #005 states in relevant part that:

>In consideration of the premium charged,
>
>ANY PERSON OR ORGANIZATION THAT YOU ARE REQUIRED IN A WRITTEN CONTRACT OR WRITTEN AGREEMENT TO INCLUDE AS AN ADDITIONAL INSURED, PROVIDED THE "BODILY INJURY" OR "PROPERTY DAMAGE" OCCURS SUBSEQUENT TO THE EXECUTION OF THE WRITTEN CONTRACT OR WRITTEN AGREEMENT.
>
>is added as Additional Insured-Lessor, per form CA 20 01, part of the policy, as respects scheduled vehicles, and any automobile leased, rented, borrowed or substituted by the named insured while being used in the business of the named insured. However, the inclusion of the Additional Insured shall not preclude the company from seeking recovery in any instance wherein the cause of loss is found to be caused by the acts or failure to act on the part of the Additional Insured.

(Pl.'s Mot. Part. Summ. J. Ex. 2 at 41.) There is no form CA 20 01 included in the Policy. Immediately preceding Endorsement #005, however, is an endorsement entitled LESSOR–ADDITIONAL INSURED AND LOSS PAYEE which has the notation CA 20 01 03 06 in the upper-right corner of the page. (*Id.* at 38.) In this endorsement, there is space allowing for

a designation of an Additional Insured (Lessor). (*Id.*) The space is filled in and says "See Endorsement #005." (*Id.*)

## II. LEGAL STANDARDS

### A. Summary Judgment

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. FED. R. CIV. P. 56(e)(1); *see, e.g., McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts.'" (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986))).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id.*

**B.    Insurance Contract Interpretation**

"Texas courts interpret insurance policies according to the rules of contract construction." *de Laurentis v. U.S. Auto. Ass'n*, 162 S.W.3d 714, 721 (Tex. App.–Houston [14th Dist.] 2005, pet. denied). The primary objective of the court is to ascertain the parties' intent, as expressed in the written instrument. *See Forbau v. Aetna Life Ins. Co. v. Country Oaks Apartments, Ltd.*, 876 S.W.2d 132, 133 (Tex. 1994). "[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not." *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009) (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)) (internal quotations omitted).

"If the insurance policy is worded so that it can be given a definite meaning or certain legal meaning, then the policy is not ambiguous. If the policy is not ambiguous, then the court construes the policy as a matter of law." *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, — S.W.3d —, 2008 WL 746522, at *4 (Tex. App.–Houston [1st Dist.] Mar. 20, 2008, no pet. h.) (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). An ambiguity exists where a policy is susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Courts interpreting contractual provisions give terms their plain, ordinary, and generally accepted meanings, unless otherwise defined by the parties. "'Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to

*create* an ambiguity.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Liquids, Inc.*, 271 F. Supp. 2d 926, 932 ( S.D. Tex. 2003) (quoting *Forbau*, 876 S.W.2d at 134).

## C.  Duty to Defend

Currently at issue is Greenwich's duty to defend Lion in the underlying lawsuit. "Under the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). "Resort to evidence outside the four corners of these two documents is generally prohibited." *Nautilus Ins. Co.*, 566 F.3d at 454. "The duty to defend does not depend on the truth or falsity of the allegations: 'A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend.'" *Id.* (quoting *GuideOne Elite Ins. C. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006)).

When the petition does not present facts within the scope of the policy's coverage, the insurer is not legally obligated to defend a suit on behalf of the insured. *Pine Oak Builders, Inc.*, 279 S.W.3d at 654. However, if the facts in the pleadings give rise to any claim covered under the policy, then the insurer has a duty to defend the insured with respect to all of the claims. *Utica Nat'l Ins. Co. of Texas v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004). Although the allegations in the petition are interpreted liberally and in favor of the insured, the court must not "read facts into the pleadings," "look outside the pleadings," or "imagine factual scenarios which might trigger coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997). The court's inquiry must turn on the facts alleged and the origin of damages, rather than the legal theories asserted. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp. 2d at 931; *see also Am. Auto., Inc. v. Mayfield*, 287 F. Supp. 2d 661, 664 (N.D. Tex.

2003). Nonetheless, "all doubts regarding the duty to defend [are resolved] in favor of the duty." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

### III. ANALYSIS

**A.     Motions to Strike**

Before addressing the Motions for Summary Judgment, the Court will consider the several motions to strike currently before it.

**1.      Ebersole Affidavit**

Attached to Greenwich's Motion for Summary Judgment is an affidavit from Kerry Ebersole. (Def.'s Mot. Summ. J. Ex. A at 2). Paragraph 2 of the Ebersole Affidavit states:

> Greenwich Insurance Company ("Greenwich") issued Commercial Lines Policy No. AEC0021436 to Asphalt Transport, Inc. ("Asphalt Transport") for the policy period of October 31, 2006 to October 31, 2007 (the "Policy"). The Policy provided commercial automotive coverage to Asphalt Transport, subject to a $1 million limit of liability for any one accident or loss. A true and correct copy of the Policy is attached hereto as Exhibit 1.

(*Id.*) Lion's Motion to Strike (Doc. No. 25) argues that this paragraph of the Ebersole Affidavit and the attached policy should be stricken because the copy of the Policy attached is missing pages. In response, Greenwich states that the pages were inadvertently left out when the policy was scanned for submission. (Def.'s Resp. to Mot. to Strike at 1). It also acknowledges that a correct copy of the Policy is attached to Lion's Motion for Summary Judgment. Since both parties agree that the policy attached as Exhibit 2 to Lion's Motion is accurate, the Court has used that copy for reference during the analysis of this motion, and all reference to the Policy will be to that copy. Accordingly, Lion's Motion to Strike paragraph 2 of the Ebersole Affidavit and the referenced policy (Doc. No. 25), is **GRANTED.**

### 2. Amended Ebersole Affidavit

After Lion's first Motion to Strike, Greenwich filed an amended Ebersole Affidavit. Lion then filed a Motion to Strike the Amended Affidavit (Doc. No. 42). The Motion to Strike argues that the attached policy is still not an accurate copy of the Policy. Additionally, it argues that paragraph 7 of the affidavit includes legal conclusions which should be excluded by the eight corners rule. Paragraph 7 states:

> The Policy provides additional insured coverage to the lessor of a "leased auto," which is defined to mean an auto "leased or rented to [Asphalt], including any substitute, replacement or extra 'auto' needed to meet seasonal or other needs, under a leasing or rental agreement that requires [Asphalt] to provide direct primary insurance for the lessor."

(Am. Ebersole Aff. at 2). Since the eight corners rules specifically prohibits reference to documents other than the policy and the complaint in determining the existence of a duty to defend, the Amended Ebersole Affidavit should not be considered in making such a determination. *Nautilus Ins. Co.*, 566 F.3d at 454. Accordingly, the Motion to Strike the Amended Ebersole Affidavit (Doc. No. 42) is **GRANTED**.

### 3. Murray Affidavit

Attached to Greenwich's Reply in Support of Motion for Summary Judgment is an affidavit from Roger Murray, Greenwich's Assistant Vice President for Underwriting for XL Specialty Insurance. (Def.'s Reply in Supp. of Summ. J. Ex. A). The affidavit offers interpretation of the endorsement currently at issue. As noted above, the eight corners rule specifically prohibits reference to documents other than the policy and the complaint in determining the existence of a duty

to defend. *Nautilus Ins. Co.*, 566 F.3d at 454. Accordingly, the Murray Affidavit is improper summary judgment evidence, and Lion's Motion to Strike (Doc. No. 35) is **GRANTED**.

### 4. Supplement and Surreply

Lion filed a Supplement to the Response and Surreply to Greenwich's Cross-Motion for Summary Judgment, which Greenwich now moves to strike. (Doc. No. 73). Lion states that the surreply is in response to the Ebersole and Murray affidavits submitted by Greenwich, and attaches an affidavit from Charles Comiskey. Since those affidavits have been stricken, they require no response. Moreover, consideration of the Comiskey Affidavit would also be a violation of the eight-corners rule. Accordingly, Greenwich's Motion to Strike (Doc. No. 73) is **GRANTED**.

### B. Motions for Summary Judgment

The sole remaining question before the Court is whether Lion is an additional insured under Endorsement #005 of the Policy.[2] If it is, then it is entitled to summary judgment on its claim for defense. If it is not, then Greenwich is not obligated to defend Lion in the underlying lawsuit and is entitled to summary judgment on the claims against it.

#### 1. Whether Lion is an Additional Insured

Greenwich argues that Lion is not entitled to additional insured status because it is not a lessor of a "leased auto." In support of this argument, Greenwich relies on language from the endorsement entitled "Lessor-Additional Insured and Loss Payee" ("Lessor Endorsement"). (Pl.'s Mot. Part. Summ. J. Ex. 2 at 39-40.) Specifically, the endorsement states that "[f]or a 'leased auto' designated or described in the Schedule, **Who Is An Insured** is changed to include as an 'insured'

---

[2] Greenwich seems to concede that if Lion is a covered party, the claims in the underlying lawsuit are covered claims.

9

the lessor named in the Schedule." (Pl.'s Mot. Part. Summ. J. Ex. 2 at 40.) "Leased auto" is then defined as:

> an 'auto' leased or rented to [Asphalt], including any substitute, replacement or extra 'auto' needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct or primary insurance for the lessor.

(*Id.*) Greenwich argues that Lion does not qualify for additional insured status because it was not the lessor of the vehicle involved in the accident. (Def.'s Mot. Summ. J. at 9-10.)

Greenwich's simplified interpretation of the Lessor Endorsement overlooks the specific requirements of the endorsement as well as the implications of their interaction with Endorsement #005. The language cited above sets out three requirements that a party must meet in order to qualify for additional insured coverage: (1) the vehicle must be a "leased auto;" (2) the vehicle must be "designated or described in the Schedule;" and (3) the party claiming additional insured status must be a "lessor named in the Schedule." (Pl.'s Mot. Part. Summ. J. Ex. 2 at 39-40.) If Lion can meet all three requirements, it is entitled to coverage under the policy pursuant to the Lessor Endorsement.

The first requirement is that the vehicle must be a "leased auto." The term "leased auto" is defined in the Lessor Endorsement as quoted above. Greenwich argues that the vehicle could not have been a "leased auto" since Lion did not lease the auto to Asphalt. However, as Lion correctly points out, the definition makes no requirement that the additionally insured party be the lessor. Rather, it only requires that the auto is leased and that the leasing agreement requires the lessee to provide insurance for the lessor. The petition in the underlying lawsuit alleges that the vehicle at issue was "owned, possessed and/or leased by [Asphalt]." (Pl.'s Mot. Part. Summ. J. Ex. 1 at 3.)

If the vehicle was leased, then it is covered by the definition of "leased auto" in the Lessor Endorsement, regardless of the identity of the lessor.

However, the court need not consider whether the vehicle was actually leased because the group of vehicles covered by the Lessor Endorsement is expanded on the next page of the policy, Endorsement #005. This expansion is revealed upon analysis of the second requirement listed above–that the vehicle be "designated or described in the Schedule." The Schedule, which is included as part of the Lessor Endorsement, is a form that has a space titled "Designation or Description of 'Leased Autos.'" (*Id.*) The space has been filled in, and reads "See Endorsement #005." Endorsement #005, quoted above, is the next page of the Policy. Endorsement #005 provides additional insured coverage "as respects scheduled vehicles, **and** any automobile leased, rented, borrowed or substituted by the named insured while being used in the business of the named insured." (*Id.* at 41) (emphasis added). The scheduled vehicles referred to in Endorsement #005 are owned by Asphalt and are listed in Endorsement #002. (*Id.* at 8-12.) Therefore, all of the vehicles listed in Endorsement #002 (presumably all of the vehicles owned by Asphalt), as well as leased, rented, borrowed, or substituted vehicles, are covered by Endorsement #005, which is expressly incorporated into the Lessor Endorsement.

Greenwich argues that this interpretation of the Policy is untenable because it renders the definition of "leased auto" contained in the Lessor Endorsement meaningless. Courts generally strive to give meaning to "every sentence, clause, and word to avoid rendering any portion inoperative." *Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, 741 (Tex. 1998). However, it is Greenwich's argument that actually renders contract language meaningless. If Greenwich's reading is adopted, the language of Endorsement #005, which provides additional insured coverage

11

for scheduled vehicles, would actually be the language rendered meaningless. Lion's argument that both scheduled vehicles and leased vehicles are covered does not render the definition from the Lessor Endorsement meaningless, but expands it.[3] Lion's interpretation is supported by the wording of the Policy and gives meaning to each provision. Reading the Lessor Endorsement, Endorsement #005, and Endorsement #002 together, the Court concludes that the vehicle involved in the underlying lawsuit is covered by the additional insured coverage whether it was owned or leased by Asphalt.

2.    **Whether Lion is a Lessor Named in the Schedule**

Having determined that the vehicle involved in the underlying lawsuit is a "'leased auto' designated or describe in the Schedule," the Court now considers whether Lion is a "lessor named in the Schedule." Greenwich argues that Lion is not a "lessor named in the Schedule," because it is not a lessor of vehicles as that terms is generally defined. However, the Schedule and Endorsement #005 expand the definition of lessor beyond its typical definition. The Schedule included in the Lessor Endorsement has a space titled "Additional Insured (Lessor)." The blank is filled in with the words "See Endorsement #005." As noted above, Endorsement #005 states that:

> ANY PERSON OR ORGANIZATION THAT YOU ARE REQUIRED IN A WRITTEN CONTRACT OR WRITTEN AGREEMENT TO INCLUDE AS AN ADDITIONAL INSURED, PROVIDED THE "BODILY INJURY" OR PROPERTY DAMAGE" OCCURS SUBSEQUENT TO THE EXECUTION OF THE WRITTEN CONTRACT OR WRITTEN AGREEMENT.

---

[3] The form and content of the Lessor Endorsement indicate that it might be a standard form, while the form and content of Endorsement #005 give the appearance that the endorsement was drafted specifically for Asphalt. Though the Court relies on no such finding to reach its conclusion, it does provide insight into why the Policy may be structured in such a way.

>>is added as Additional Insured-Lessor, per form CA 20 01, part of the policy...

(Pl.'s Mot. Part. Summ. J. Ex. 2 at 41.) Asphalt was required to provide insurance to Lion pursuant to the TGA, a written agreement. Accordingly, Endorsement #005 applies to Lion, and Lion is added as an Additional Insured-Lessor under the Lessor Endorsement, even though it was not a lessor in the traditional sense of the word.

The language "per form CA 20 01" is the only language that is even marginally confusing, since there is no form CA 20 01 contained in the Policy. However, form CA 20 01 03 06, the Lessor Endorsement, immediately precedes Endorsement #005. Although the form is not accurately cited in Endorsement #005, it should be clear to the average reader that Endorsement #005 is referring to the Lessor Endorsement since the form numbers and titles are similar, and the documents are in such close proximity to each other. Even if the reference to form CA 20 01 does not lead a reader to the Lessor Endorsement, the connection between the two documents is unavoidable since the Lessor Endorsement specifically refers to Endorsement #005 in identifying the additional insured party.

The Court finds that the definition of leased auto as well as the identification of the additional insured party in the Lessor Endorsement has been expanded beyond the normal definition of a lessor and leased auto to include Lion and the vehicle involved in the underlying litigation. Although this finding requires reference to several different parts of the Policy, it is supported by the plain language of the endorsements when read in conjunction with one another. Since Lion is an additional insured under the Policy, Greenwich must provide a defense in the underlying lawsuit.

## IV. CONCLUSION

13

Since Greenwich has a duty to defend Lion in the underlying lawsuit, Lion is entitled to summary judgment on its duty to defend claim. Accordingly, Lion's Motion for Partial Summary Judgment (Doc. No. 18) is **GRANTED**, and Greenwich's Motion for Summary Judgment (Doc. No. 22) is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 20th day of August, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.